IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH BURNS,  )
    Petitioner,  )
        )    Civil Action No. 14-300 Erie
v.  )    Magistrate Judge Susan Paradise Baxter
        )
ATTORNEY GENERAL OF THE STATE  )
OF PENNSYLVANIA, et al.,  )
    Respondents.  )

# **OPINION**[1]

Presently before the Court is a petition for a writ of habeas corpus filed by state prisoner Kenneth Burns (the "Petitioner"). [ECF No. 3]. For the reasons set forth below, the Respondents' motion to dismiss the petition [ECF No. 11] is granted, all of Petitioner's claims are dismissed with prejudice, and a certificate of appealability is denied on all claims.

## I.

**A.**     **Relevant Background**[2]

In September 2005, Petitioner was tried in the Court of Common Pleas of Crawford County on charges that he sexually assaulted his stepdaughter, S.B., on numerous occasions throughout her early childhood and teen years. Petitioner waived his right to be represented by counsel and proceeded to trial *pro se* with the assistance of stand-by counsel, Edward J. Hatheway, Esquire. The Honorable John F. Spataro presided over Petitioner's trial. The jury convicted Petitioner of indecent assault, statutory sexual

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]     Respondents filed the state court record in four volumes. The pages in the volumes are contiguously numbered 1 through 1621 and while be cited herein as "SCR at __."

1

assault, endangering the welfare of a child, and corruption of minors. On May 10, 2006, Judge Spataro sentenced Petitioner to an aggregate term of 64-156 months of imprisonment.

Petitioner pursued a direct appeal with the Superior Court of Pennsylvania. Michelle Bailey Baird, Esquire, was his appellate counsel. Petitioner claimed in that appeal that the prosecution violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963) when it failed to disclose during discovery the existence of taped recorded interviews with S.B.'s mother, R.B., and her biological father, A.B. On September 18, 2007, the Superior Court issued a Memorandum in which it affirmed Petitioner's judgement of sentence. It held: "we agree with the trial court that the Commonwealth did not violate Brady in failing to disclose the tape recordings because the information contained therein was neither exculpatory nor impeaching." (Commonwealth v. Burns, No. 979 WDA 2006, slip op. at 6 (Pa.Super.Ct. Sept. 18, 2007) ("Burns I"), SCR at 781-87). Petitioner did not file a petition for allowance of appeal ("PAA") with the Supreme Court of Pennsylvania.

Next, Petitioner filed his first petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT.ANN. § 9541 *et seq.* (SCR at 785-93). The PCRA court appointed Daniel A. Durst, Esquire, to represent him and counsel filed an amended PCRA petition. (SCR at 802-811). Petitioner claimed that his direct appeal counsel, Attorney Bailey Baird, was ineffective for:

1. failing to raise before the Superior Court on direct appeal the issue of whether Petitioner was denied his constitutional right to counsel during his trial; and,

2. failing to advise Petitioner of his right to seek a PAA with the Supreme Court of Pennsylvania following the Superior Court's decision in Burns I.

The PCRA court denied both claims (SCR No. 815-25, 948-51) and Petitioner filed an appeal with the Superior Court through new counsel, Robert E. Draudt, Esquire. On June 16, 2011, the Superior Court issued a Memorandum in which it held that the PCRA court erred in denying relief on the second claim set forth above. As a result of its holding, the Superior Court remanded for reinstatement of

Petitioner's right to seek a PAA *nunc pro tunc* in his direct appeal. (Commonwealth v. Burns, No. 1341 WDA 2010, slip op. (Pa.Super.Ct. June 16, 2011) ("Burns II"), SCR at 1050-53). With respect to the first claim set forth above, the Superior Court held: "[i]n light of our holding, we do not reach the issue of whether" Attorney Bailey Baird was ineffective for failing to raise on direct appeal the claim that Petitioner was denied his right to counsel because it "may be reasserted in a PCRA petition if the Supreme Court denies allowance of appeal. A subsequent PCRA petition would be considered [Petitioner's] first petition." (Burns II, No. 1341 WDA 2010, slip op. at 8).

Thereafter, Petitioner, through Attorney Draudt, filed a PAA with the Supreme Court of Pennsylvania in which he challenged the Superior Court's decision on direct appeal in Burns I. (SCR at 1120-23). On November 22, 2011, the Supreme Court of Pennsylvania denied a PAA. (SCR at 1134). Petitioner's judgment of sentence became final on February 20, 2012, which is when the 90-day time period expired for filing a writ of certiorari with the Supreme Court of the United States in his direct appeal. Gonzalez v. Thaler, — U.S. —, 132 S.Ct. 641, 653-56 (2012) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review). See also Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

On November 15, 2012, Petitioner filed a *pro se* PCRA petition (SCR at 1135-48), which Attorney Draudt amended on March 1, 2013. (SCR at 1182-96). The PCRA court scheduled argument on the matter for March 5, 2013. However, the day before that argument, Petitioner filed a *pro se* petition to amend his request for PCRA relief and Attorney Draudt filed a motion requesting leave to withdraw as Petitioner's counsel. The court granted Attorney Draudt's motion and scheduled a hearing for April 3, 2013. On that date, the PCRA court issued an order in which it explained that:

> [Petitioner] now informs the Court that he does not wish to waive his right to counsel and instead requests that the Court appoint PCRA counsel. **He requests that the Court**

3

**appoint Attorney Edward Hatheway who was standby counsel for the trial. Currently, the Court sees no conflict in accommodating [Petitioner] in that regard.**

(SCR at 1274 (emphasis added)). The court appointed Attorney Hatheway to be Petitioner's counsel and directed counsel to file an amended PCRA petition. (SCR at 1274).

The amended PCRA petition was filed on May 12, 2013. (SCR at 1282-1305). Petitioner contended that he was entitled to relief based upon exculpatory evidence of his innocence that became available after his trial:

> Specifically, after the defendant's jury trial exculpatory evidence became available in the form of the alleged victim, [S.B.], telling **David Allen Poghen**, **Shawn Coudriet** and **Williams Ellsworth May**, that she had fabricated false sexual assault charges again the defendant and that she had testified falsely during the defendant's jury trial.

(SCR at 1293 (emphasis added)).

After considering briefing from both parties (SCR at 1307-22), the PCRA court issued an opinion in which it held that Petitioner was only entitled to an evidentiary hearing regarding Poghen's and May's proffered testimony. It rejected Petitioner's argument that he needed further record development regarding Coudriet's proffered testimony. In so holding, the PCRA court explained:

> [W]e find that Coudriet's proposed testimony could not serve as the basis for relief under the four pronged test for after-discovered evidence.
>
> > To obtain relief based on after-discovered evidence, [Petitioner] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.
>
> Commonwealth v. Pagan, 597 Pa. 69, 106, 950 A.2d 270, 292 (2008), quoted in Commonwealth v. Perrin, 2013 PA Super 1, 59 A.3d 663, 665 (2013). Regardless of whether Coudriet's evidence would have been available to [Petitioner] at the time of trial by exercising due diligence, it can satisfy none of the remaining prongs of this conjunctive test. No evidentiary hearing is necessary to reach this conclusion.
>
> Coudriet states that he would testify to overhearing [S.B.] in the course of an argument "tell [my brother, Morgan] that I will make up lies about you like I did about

4

my step-father." The absence of any indication of what trait, feature, conduct, or other aspect of [Petitioner's] being to which she referred makes such testimony irrelevant or immaterial to an adjudication of guilty. See Pa.R.E. 401; Commonwealth v. D'Amato, 579 Pa. 490, 520-21, 856 A.2d 806, 824-25 (2004) (newly discovered evidence claim was meritless where there was no nexus between the conduct described and the prosecuted offense). If her statement referred to sexual abuse, it would serve only to impeach her credibility by suggesting that she may have fabricated her account.[10] It would also be merely cumulative or corroborative:[11] [A.B, S.B.'s] father, testified at trial that his daughter had told him she lied about [Petitioner] sexually assaulting her.[12] Trial Transcript, p. 114.

> [10] We can discern, however, no exception to the hearsay rules under which this evidence would be admissible to impeach [S.B.]. See Pa.R.E. 607(b), 802.
>
> [11] [Petitioner's] brief errs in distinguishing [S.B.'s] statements as all post-trial, as her retort to Morgan Coudriet is alleged to have been uttered prior to the trial date.
>
> [12] [R.B., S.B.'s] mother, also testified for the defense that [A.B.] had reported this admission to her. Trial Transcript, p. 122-23.

Finally, although [Petitioner's] convictions were based largely upon his stepdaughter's testimony,[13] the admission of this nebulous evidence at a new trial would be unlikely to result in a different verdict. Coudriet's statement lacks the specificity of [A.B.'s] recantation testimony, which a jury heard and rejected; and [S.B.'s] alleged utterance lacks indicia of truthfulness, as it was simply a threat made during an argument with a sex offender. Her statement is, moreover, offered by a convicted felon[14] incarcerated with [Petitioner], whose credibility is thus compromised. Cf. Commonwealth v. Anderson, 466 Pa. 339, 342, 353 A.2d 384, 386 (1976) ("There is no less reliable form of proof [than recanting testimony], especially when it involves an admission of perjury.").

The proffered testimony of May and Poghen, in contrast, seems exculpatory – assuming its veracity. May would purportedly testify that [S.B.] told him she had lied to enforcement officials and at trial about [Petitioner's] sexual assaults, in response to pressure from her father, [A.B.], who wanted to reunite with [R.B.]. Poghen's testimony offer is that on meeting [S.B.] at the dentist's office, he had questioned her and she had replied that [Petitioner] had not sexually assaulted her. This evidence could not have been obtained prior to trial, as the alleged conversations with [S.B.] occurred in or after 2009. Being post-trial, the evidence is arguably not cumulative, and perhaps not merely corroborative of [A.B.'s] defense testimony. Whether it will be used solely to impeach [S.B.'s] trial testimony can, and perhaps should be tested at an evidentiary hearing.[15]

> [13] The Commonwealth offered also such corroborative evidence as [S.B.'s] knowledge of [Petitioner's] intimate physical characteristics, and

5

his decrease in sexual contact with his wife due to a fibroid growth. Trial Transcript, pp. 70, 102.

[14.] Shawn Coudriet also is classified as a sexually violent predator under Megan's Law II. C.P. Crawford Case No. CR 2005-616.

[15.] We are not implying that this hearsay evidence will be admissible.

(SCR at 1326-29).

The PCRA court held an evidentiary hearing on August 30, 2013. Pogan, May, Petitioner and S.B. testified at this hearing. On October 23, 2013, the PCRA court dismissed Petitioner's request for relief. (SCR at 1508). It held:

> Poghen is a twenty-six year old inmate at Fayette, where he has been lodged in the same cell block as [Petitioner]. He testified that he twice met [S.B.]. First, at a friend's Halloween party in Meadville about ten years ago, when he slept with her while intoxicated; and second, at a dentist's office in Conneautville shortly after his release on parole in June or July 2010.[6] On the latter occasion, he asked [S.B.] whether [Petitioner] had raped her, and she admitted that she had lied.[7] She declined to tell this to authorities, despite his urging, for fear of getting in trouble for having fabricated her story. He "tried to get it on a text message," but she did not reply. PCRA Hearing Transcript, p. 16. Poghen was thereafter returned to Fayette on a parole violation and new felony convictions, where he again saw [Petitioner] and told him of his encounter with [S.B.].
>
> [6.] Poghen's "Witness Certification" attached to the [PCRA] Petition dates the dentist's office meeting to the summer of 2009, but the year is insignificant. This and other inconsistencies that the Commonwealth notes in its brief in opposition are generally inconsequential, and in asserting that May had actually met Poghen prior to imprisonment at Fayette, erroneous. See PCRA Hearing Transcript, pp. 45-46.
>
> [7.] [S.B.'s] alleged out of court statements were clearly offered for the truth of their content, and thus under Pa.R.C.P. 801 hearsay, to which no exception is apparent to the Court. Although these statements would have exposed her to liability for perjuring herself at [Petitioner's] trial (for which the six year statute of limitations had not run), the hearsay exception for a statement against interest is unavailable where, as here, the declarant is available. Id. at 804(3). The Commonwealth agrees that the alleged statements are hearsay, but did not object to their admission at the hearing, and only initiated an objection to defense counsel's question as being impermissibly leading. PCRA Hearing Transcript, p. 80, lines 23-24, and p. 8, lines 10-19.

6

May was released from jail in 2009 and moved to Springboro where his mother lived. He recounted meeting [S.B.] in the summer of 2010 at a club in Linesville where she was dancing. They had been intimate on numerous occasions at his home and elsewhere, and he had asked her about being sexually assaulted by her stepfather. She stated that the accusations had been false, but also would not respond to his text messages. He was incarcerated at Fayette in 2012 where he met Poghen, and later arranged to talk with [Petitioner].

[S.B.] stated that she knew Poghen from when she was about fourteen years old. It was possible that she saw her at the dentist's office, but she had been preoccupied with caring for a child, and did not see him. She did not speak with him, and certainly did not confess to lying about [Petitioner]. As for May, she did not recall ever coming into contact with him, and replied "absolutely not" when asked whether she had told him that she lied about [Petitioner] raping her. PCRA Hearing Transcript, pp. 97-98. She had been living in Ashtabula, Ohio in 2009 and 2010, and had worked in Linesville only briefly.[8]

> [8.] She added, "There are a lot of people that went to that club. I don't know him personally. I've never hung out with him outside of the club or even noticed his existence there." PCRA Hearing Transcript, p. 99, lines 18-21.

## Conclusions

[S.B.'s] testimony was compelling, and that of both Poghen and May [was] totally lacking in credibility with respect to her alleged recantation.[9] While both men may have known [S.B.], there was nothing believable in their testimony relevant to [Petitioner's] convictions for having sexually abused her. In short, we find no evidence that she later recanted her trial testimony.[10] In the absence of any exculpatory evidence that would have changed the outcome of his trial, [Petitioner's] petition for relief must fail.[11]

> [9.] Recantation testimony is inherently unreliable, and all the more so when offered only by third party witnesses, particularly the defendant's fellow inmates. See Commonwealth v. McCloughan, 279 Pa.Super. 599, 606, 421 A.2d 361, 364 (1980) ("Recanting testimony is exceedingly unreliable and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true.")

> [10.] The recantation cases discussed by [Petitioner] and those cited by the Commonwealth are inapposite. The witnesses there unquestionably recanted their trial testimony, and thus the issue was whether the recantation was credible. The question before us is whether [S.B.] recanted her trial testimony.

> [11.] In light of our finding that Poghen and May offer no credible evidence that [S.B.] recanted her trial testimony, rendering relief under 42 Pa.C.S. § 9543(a)(2)(vi) unavailable, we need not address the four-pronged test for

7

> after-discovered evidence. See Commonwealth v. D'Amato, 856 A.2d 806, 823-26 (Pa. 2004) (remanding to the PCRA Court for an assessment of the credibility of [petitioner's] recantation evidence); cf. Commonwealth v. Moss, 689 A.2d 259, 262-63 (Pa.Super. 1997) (denying PCRA relief where the evidence, had it not been destroyed, may have qualified as after-discovered). Commonwealth v. Pagan, 597 Pa. 69, 950 A.2d 270 (2008), was decided on direct appeal and hence does not require such a determination, as [Petitioner] suggests in his supporting brief.

(SCR at 1484-87).

Petitioner, through Hatheway, filed an appeal with the Superior Court. On May 28, 2014, the Superior Court issued a Memorandum in which it affirmed the PCRA court's decision. (Commonwealth v. Burns, No. 1813 WDA 2013, slip op. (Pa.Super.Ct. May 28, 2014) ("Burns III"), SCR at 1586-87). It held that the record substantiated the PCRA court's credibility determinations and, therefore, Petitioner's contention that he was entitled to a new trial based upon the alleged after-discovered exculpatory evidence had no merit. On October 7, 2014, the Supreme Court of Pennsylvania denied Petitioner's request for a PAA from the Superior Court's decision in Burns III. (SCR at 1621).

Next, Petitioner filed with this Court his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this statute, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable in a federal habeas action. Id. See also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Petitioner raises the following four grounds for relief:

**Claim One:** "Judge Spataro failed to instruct the jury at the close of the state court trial that Petitioner's in-court testimony was evidence that they could not reject as he is presumed to be innocent throughout the trial." [ECF No. 3 at 5].

8

**Claim Two:** "Judge Spataro committed a constitutional error of law when he permitted standby counsel to question trial witnesses and make incompetent statements of fact and failed to argue that [Petitioner] is presumed to be innocent throughout the trial." [ECF No. 3 at 7].

**Claim Three:** "Judge Spataro … committed a constitutional error of law when he <u>illegally</u> permitted Edward Hatheway, [trial] stand-by counsel, to represent him at his first PCRA hearing, as this was a <u>conflict</u> of interest as counsel Hatheway cannot argue his own '<u>incompetence</u>' as stand-by counsel in [at the trial] in a PCRA hearing." [ECF No. 3 at 8 (emphasis in original)].

**Claim Four:** "<u>Actual Innocence</u>. This Petitioner has maintained his innocence from the day he was arrested and prosecuted by the District Attorney. The Court of Common Pleas has taken him back to the Court and coerced him to consider pleading guilty to the state's charges in return for immediate discharge. PCRA counsel so advised him that the County of Crawford would release him from further incarceration upon him giving the County a guilty plea." [ECF No. 3 at 10 (emphasis in original)].

Respondents filed a motion [ECF No. 11] in which they argued, *inter alia*, that Petitioner's claims should be dismissed with prejudice as procedurally defaulted because Petitioner failed to exhaust them. Petitioner subsequently filed a reply [ECF No. 14] and a brief in support of his petition [ECF No. 15].

## B. Discussion

### 1. Claims 3 and 4 Are Not Cognizable In This Federal Habeas Case

In Claim 3, Petitioner takes issues with Judge Spataro's appointment of Edward Hatheway as his counsel at his most recent PCRA proceeding. Because Petitioner expressly requested that Hatheway be appointed this claim lacks merit, but it is dismissed because complaints about what occurred during a PCRA proceeding are not cognizable in a federal habeas action. As the United States Court of Appeals for the Third Circuit explained in <u>Hassine v. Zimmerman</u>, 160 F.3d 941 (3d Cir. 1998):

> [t]he federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. **Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in**

> **the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.**

160 F.3d at 954 (internal citations omitted) (emphasis added). See also Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction.")

In Claim 4, Petitioner contends, without further explanation, that he is "actually innocent" and that he has always maintained his innocence, notwithstanding efforts to coerce him to enter a guilty plea. [ECF No. 3 at 10]. The "actual innocence" claim that Petitioner raises in Claim 4 is not the same claim that he raised in his most recent PCRA proceeding, which was premised upon his assertion that S.B. recanted her trial testimony. In his habeas petition, Petitioner admits that the first time he raised the "actual innocence" claim at issue in Claim 4 is in this federal habeas case. [ECF No. 3 at 10].

A stand-alone claim of actual innocence is not cognizable in federal habeas. Albrecht v. Horn, 485 F.3d 103, 121-22 (3d Cir. 2007) (citing Herrera v. Collins, 506 U.S. 390 (1993)). See also BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 1:60, WestlawNext (database updated June 2015) ("A freestanding claim of actual innocence in a non-capital case based on newly discovered evidence is not a ground for habeas corpus relief." (citing Herrera, additional citations omitted)).[3] For this reason, Claim 4 is dismissed. For the reasons set forth below, it is also dismissed because Petitioner failed to exhaust it.

---

[3] In Herrera, the Supreme Court held that federal habeas review is not available "absent an independent constitutional violation occurring in the underlying state criminal proceeding," and that "a claim of 'actual innocence' is not itself a constitutional claim." 506 U.S. at 400, 404. The Supreme Court explained that once a defendant is found guilty after a fair trial in the state court, he no longer is entitled to a presumption of innocence, and thus comes before the federal habeas court not as one who is innocent, but as a convicted criminal. Id. at 399-400. Because such a determination in the state criminal trial is "a decisive and portentous event" and "[s]ociety's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the guilt or innocence of one of its citizens," freestanding claims of actual innocence are not reviewable in federal habeas actions. Id. at 401 (internal quotations and citations omitted). The Supreme Court noted that "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." Id. at 400. "Federal courts are not forums in which to relitigate state trials." Id. at 401 (quotations and citation omitted). Thus, the Supreme Court rejected Herrera's claim that,
*Footnote continued on next page*

## 2. Claims 1, 2, and 4 Are Procedurally Defaulted

A federal habeas court may not grant a state prisoner's petition for a writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). See also O'Sullivan v. Boerckel, 526 U.S. 838, 842-49 (1999).

> [It is] principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740 (1886)]. Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See

---

even if the proceedings that resulted in his conviction and sentence were entirely fair and error free, his innocence would make his execution a constitutionally intolerable event. Based upon the Herrera decision, the Third Circuit Court has held that in non-capital cases such as this case: "It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) (quoting Herrera, 506 U.S. at 400). See also Albrecht, 485 F.3d at 121-22; Han Tak Lee v. Glunt, 667 F.3d 397 (3d Cir. 2012) (where the petitioner's claims were based on a due process violation, not a claim of actual innocence).

The Supreme Court left open the possibility that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim." Herrera, 506 U.S. at 417. In House v. Bell, 547 U.S. 518 (2006), the Court once again left open the question of whether a truly persuasive freestanding innocence claim in a capital case would warrant federal habeas relief if no state avenues of relief remain available. Id. See also McQuiggin v. Perkins, — U.S. —, 133 S.Ct. 1924, 1931 (2013). In District Attorney's Office for the Third Judicial District v. Osborne, 557 U.S. 52 (2009), which was a non-capital case in which a state inmate brought an action under 42 U.S.C. § 1983 to compel the State of Alaska to release biological evidence so that it could be subject to DNA testing, the Supreme Court in dicta assumed without deciding that an actual innocence claim could be brought in habeas, but noted "the high standard any claimant would have to meet" to succeed with such a claim. Id. at 2321 (citing House and Herrera). Sistrunk v. Rozum, 674 F.3d 181, 187 n.2 (3d Cir. 2012). Suffice it to say that if indeed an actual innocence claim could be brought in a non-capital federal habeas case, Petitioner has fallen short of offering the type of new evidence of innocence that would entitle him to habeas relief.

11

> Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Rose v. Lundy, 455 U.S. 509, 517 (1982) (footnote omitted), abrogated on other grounds by Rhines v. Weber, 544 U.S. 269 (2006).

Importantly, in order to exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Superior Court of Pennsylvania either on direct or PCRA appeal. See, e.g., Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Petitioner carries the burden of proving he exhausted his state court remedies with respect to this claim. See, e.g., Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). He cannot meet that burden because he did not raise Claims 1, 2, or 4 in any state court proceeding.

Because Petitioner did not exhaust Claims 1, 2, or 4, each claim is now procedurally defaulted. See, e.g., Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). See also Rolan v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012) ("Procedural default occurs when a claim has not been fairly presented to the state courts (*i.e.*, is unexhausted) and there are not additional state remedies available to pursue[.]"). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner failed to raise it in compliance with a

state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.[4]

Based upon all of the foregoing, Claims 1 and 2 are dismissed as procedurally defaulted. As set forth above, Claim 4 is not cognizable in a federal habeas case and is dismissed for that reason. It is also dismissed for the additional reason that it is procedurally defaulted.

### 3. Petitioner's "Recantation" Claim Is Dismissed For Several Reasons

In his reply and in his brief in support of his habeas petition (both of which Petitioner filed after Respondents filed their answer to the petition), Petitioner argued that he is entitled to habeas relief based upon S.B.'s alleged recantation. This is the same claim that Petitioner raised in his most recent PCRA proceeding. There are several problems with this claim.

First, Petitioner did not raise his recantation claim as a separate claim in his petition and, therefore, it not properly before the Court. A habeas petitioner cannot raise new claims in a reply (formerly known as a traverse) or in other filings made after the respondent has filed the answer. Therefore, the only claims properly before the Court are the four claims that Petitioner raised in the petition. See Rule 2(c) of the Rules Governing Section 2254 Cases In the United States District Courts

---

[4] A petitioner who has defaulted a federal habeas claim can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." See, e.g., Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). Petitioner points to no evidence and makes no allegation concerning cause for his default or prejudice stemming therefrom.
    A petitioner may also overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." This exception provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). See also Houck v. Stickman, 625 F.3d 88, 93-95 (3d Cir. 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id.; Hubbard, 378 F.3d at 339-40. It is not applicable to Petitioner's case.

13

("The petition must: (1) Specify **all the grounds for relief** available to the petitioner; (2) state the facts supporting each ground[.]") (emphasis added); Local Rule 2254.B.2.b (same); Paragraph 12 of standard form ("For this petition, state **every ground** on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.") (emphasis added). See also Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.")

Second, even if the recantation claim is properly before the Court and it is considered on the merits, it would be dismissed because it is not cognizable in a federal habeas proceeding. Petitioner raised his recantation claim in his PCRA proceeding under a provision of the state statute that is meant to address claims of actual innocence based upon newly-discovered evidence. 42 PA.CONS.STAT.ANN. § 9543(a)(2)(vi). This provision of the PCRA does not have a comparable counterpart in the federal habeas statute. See, e.g., Albrecht, 485 F.3d at 122-23. Petitioner claims that S.B.'s recantation demonstrates that he is actually innocent. As discussed above, a stand-alone actual innocence claim is not cognizable in a federal habeas action. Thus, while the PCRA provides for "actual innocence" claims, the federal habeas statute requires in non-capital cases "actual innocence plus a constitutional violation." Id. at 122 (citing Herrera).

Third, and finally, if Petitioner's recantation claim was cognizable in this federal habeas case, it would be denied. Because the state court denied it on the merits, this Court's review of it would be governed by AEDPA's standard of review, which is codified at 28 U.S.C. § 2254(d). AEDPA reflects the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). AEDPA's standard of review provides:

14

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to … clearly established Federal law, as determined by the Supreme Court[,]" 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406. Few adjudications by state courts fall within § 2254(d)(1)'s "contrary to" clause.

Most state court's adjudications must be evaluated under § 2254(d)(1)'s "unreasonable application" clause. "If the state court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case." Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1399 (2011) (quotation marks omitted). The Supreme Court advised:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See [Lockyer v. Andrade, 538 U.S. 63, 75 (2003)].
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). **It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's**

15

> precedents. It goes no farther…. **As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.**

Harrington, 562 U.S. at 102-03 (parallel citations omitted) (emphasis added).

Finally, the test for § 2254(d)(2)'s "unreasonable determination of facts" clause:

> is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, — U.S. — [ ], 131 S. Ct. 1388, 1401-03 (2011).

Rountree v. Balicki, 640 F.3d 530, 537-38 (3d Cir. 2011) (parallel citations omitted).

In addition, specific findings of fact made by a state court state court have always been afforded considerable deference in federal habeas, even prior to the enactment of AEDPA. As the Third Circuit Court explained:

> It is a well-established principle of federal law that state trial judges deserve substantial deference.
>> Face to face with the living witnesses, the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases, the exercise of his power of observation often proves the most accurate method of ascertaining the truth … how can we say he is wrong? We never saw the witnesses.

Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) (quoting United States v. Oregon Medical Society, 343 U.S. 326, 339 (1952), which was quoting Boyd v. Boyd, 169 N.E. 632 (N.Y. 1930)). AEDPA continued that substantial deference and requires that "a determination of a factual issue made by a State court

16

**shall be presumed to be correct**. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1) (emphasis added).

Reviewing Petitioner's recantation claim through AEDPA's deferential standards of review, this Court must conclude that it has no merit. As noted above, the specific findings of fact made by the PCRA court are presumed to be correct, and to rebut that presumption Petitioner must produce "clear and convincing evidence." 28 U.S.C. §2254(e)(1). He has not done so. Therefore, this Court is bound by the PCRA court's determination that the testimony that Petitioner put forth to support this recantation claim lacked credibility. This Court also is bound by the PCRA court's determination that S.B.'s PCRA testimony that she did not recant her trial testimony was credible. For these reasons, Petitioner's recantation claim fails on the merits. It also fails because Petitioner has not demonstrated that the state court's adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

## C. Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists

17

of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be dismissed with prejudice. Accordingly, a certificate of appealability is denied.

## II.

For the reasons set forth above, Respondents' motion to dismiss [ECF No. 11] is GRANTED. Petitioner's claims are dismissed with prejudice and a certificate of appealability is denied on all claims.

An appropriate Order follows.

Dated: January 12, 2016

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge